UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                     Civil Action No.  25-CV-584

ALEX E. EICHHORN, GALLAGHER
BASSETT SERVICES, INC., SCOTT WADE,
and TABAK LAW, LLC,

        Defendants.

## COMPLAINT

The plaintiff, the United States of America, by and through its undersigned counsel, alleges for its complaint against the defendants, Alex E. Eichhorn, Gallagher Bassett Services, Inc., Scott Wade, and Tabak Law, LLC, as follows:

1.      The United States brings this action to recover civil penalties, treble monetary damages, and costs, as authorized by the False Claims Act, 31 U.S.C. § 3729 et seq., and to assert related common law claims, concerning the defendants' conspiracy to knowingly and improperly avoid an obligation to pay money to the federal government.

2.      Several years ago, one of our Nation's military veterans, Jason Pica, sustained workplace injuries while working as a private-sector employee of Wacker Neuson America Corporation.

3.      As a result of Mr. Pica's veteran status, and pursuant to 38 U.S.C. § 1710, the United States Department of Veterans Affairs ("VA") provided medical care to Mr. Pica for the injuries that he sustained during his private-sector employment.

1

4. The VA provided this medical care to Mr. Pica over the course of several years, from January 2016 through June 2022, and the VA did so free of charge to Mr. Pica.

5. Defendants Alex E. Eichhorn and Tabak Law, LLC (the "Veteran's Counsel Defendants") subsequently prosecuted a worker's compensation claim on Mr. Pica's behalf against Wacker Neuson America Corporation, Zurich American Insurance Co., and Defendant Gallagher Bassett Services, Inc.

6. Defendant Scott Wade represented Gallagher Bassett in the worker's compensation proceedings before the State of Wisconsin's Office of Worker's Compensation Hearings (the "Board").

7. Upon learning about Gallagher Bassett's responsibility to compensate Mr. Pica for his workplace injuries, the VA served the Veteran's Counsel Defendants and Gallagher Bassett with a notice of claim for the VA's billing charges related to the medical care that it had provided to Mr. Pica, which totaled $112,917.05.

8. Rather than make any effort to satisfy the VA's claim, the defendants conspired with one another to avoid paying the federal government.

9. The end result of this conspiracy was that Gallagher Bassett agreed to pay the Veteran's Counsel Defendants less than the face value of the VA's claim, $75,000, specifically earmarked for Mr. Pica's medical expenses, in exchange for the Veteran's Counsel Defendants accepting the "risk" that the VA would continue its collection efforts, while the Veteran's Counsel Defendants paid themselves an unauthorized $15,000 attorney fee from these funds and distributed the remainder as a windfall to Mr. Pica.

2

10.     None of the defendants made any effort to satisfy the VA's claim, and the United States now brings this action to recover the funds to which it is legally entitled and which the defendants illegally conspired to deprive the federal government.

### Jurisdiction and Venue

11.     The United States brings claims under the False Claims Act, 31 U.S.C. § 3729 et seq., providing this Court with subject matter jurisdiction under 31 U.S.C. § 3732(a), in addition to 28 U.S.C. §§ 1331 and 1345.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732 because: (i) Mr. Eichhorn is a domiciliary of the State of Wisconsin who resides in this District and is an attorney licensed by the State of Wisconsin who practices primarily within this District, including at all points relevant to this lawsuit; (ii) Mr. Wade is a domiciliary of the State of Wisconsin who resides in this District and is an attorney licensed by the State of Wisconsin who practices primarily within this District, including at all points relevant to this lawsuit; (iii) Tabak Law is a limited liability company organized under the laws of the State of Wisconsin with its principal place of business located within this District; (iv) a substantial portion of the events or omissions giving rise to the United States' claims occurred within this District; and (v) all the defendants are subject to this Court's personal jurisdiction with respect to this action.

13.     This Court may exercise personal jurisdiction over each of the defendants based on their domicile in the State of Wisconsin, the business transactions they have conducted within the State of Wisconsin, their contracts with residents of the State of Wisconsin, and their other contacts with the State of Wisconsin connected to the factual circumstances underlying this case.

14.     The United States' claims are timely under 28 U.S.C. § 2415 and 31 U.S.C. § 3731(b) because less than three years have passed since the date when the defendants

committed their violations of the False Claims Act and/or when the United States' claims accrued.

**<u>The Parties</u>**

15.     The United States files this Complaint on behalf of the United States Department of Veterans Affairs, an agency and instrumentality of the United States. It is the mission of the VA to care for veterans, their families, caregivers, and survivors, including by providing a comprehensive system offering healthcare services to veterans.

16.     Upon information and belief, Defendant Alex E. Eichhorn is a domiciliary of the State of Wisconsin and works as an attorney licensed by the State of Wisconsin within Milwaukee County, Wisconsin, at the law firm Tabak Law, LLC.

17.     Upon information and belief, Defendant Gallagher Bassett Services, Inc. is a corporation organized under the laws of the State of Delaware, which provides professional services related to insurance claims management and maintains its principal place of business at 2850 Golf Road, Rolling Meadows, Illinois 60008.

18.     Upon information and belief, Defendant Scott Wade is a domiciliary of the State of Wisconsin and works as an attorney licensed by the State of Wisconsin within Milwaukee County, Wisconsin, at the law firm von Briesen & Roper S.C.

19.     Upon information and belief, Defendant Tabak Law, LLC is a limited liability company organized under the laws of the State of Wisconsin, which provides legal services related to disability, social security, and worker's compensation matters and maintains its principal place of business at 6045 North Green Bay Avenue, Glendale, Wisconsin 53209.

4

## The Federal Medical Care Recovery Act and Veterans' Benefits Act

20.     As part of fulfilling its organizational mission, the VA has long provided medical care to our Nation's military veterans, including medical care unrelated to veterans' military service following their discharge.

21.     The annual cost of the medical care rendered to veterans by the VA runs in the tens of billions of dollars.

22.     After the Supreme Court ruled that the federal government did not have a common law claim to recovery of the cost of medical care provided to a veteran against responsible third parties in *United States v. Standard Oil Company of Cal.*, 332 U.S. 301 (1947), Congress passed the Medical Care Recovery Act ("FMCRA") in 1962. *See United States v. Merrigan*, 389 F.2d 21, 22–23 (3d Cir. 1968) (describing the history behind the statute).

23.     Section 2651(a) of the FMCRA provides in relevant part as follows:

> In any case in which the United States is authorized or required by law to furnish or pay for hospital, medical, surgical or dental care and treatment … to a person who is injured or suffers a disease… under circumstances creating tort liability upon some third person … to pay damages therefor, the United States shall have a right to recover (independent of the rights of the injured or diseased person) from said third person, or that person's insurer, the reasonable value of the care and treatment so furnished … and shall, as to this right be subrogated to any right or claim that the injured or diseased person … has against such third person to the extent of the reasonable value of the care and treatment so furnished, to be furnished, paid for, or to be paid for [by the United States].

42 U.S.C. § 2651(a).

24.     The purpose behind the statute was to give the federal government an "independent right of recovery from the tortfeasor of the reasonable value of the care and treatment [that the government] furnishes to the injured person." *Merrigan*, 389 F.2d at 23–24;

5

*see also United States v. Haynes*, 445 F.2d 907, 908 (5th Cir. 1971) ("Reduced to fundamentals, the basic purpose of the Medical Care Expense Recovery Act is to allow the federal government to recover from third party wrongdoers the value of medical care which is provided to injured persons.").

25.     Congress has refined the FMCRA over the years since its enactment, and expanded upon it, including by passing the Veterans' Benefits Act ("VBA") in 1981, which provides in relevant part as follows:

> [I]n any case in which the United States is required by law to furnish or pay for care or services under this chapter for a non-service-connected disability …, the United States has the right to recover or collect from a third party the reasonable charges of care or services so furnished or paid for to the extent that the recipient or provider of the care or services would be eligible to receive payment for such care or services from such third party if the care or services had not been furnished or paid for by a department or agency of the United States.

38 U.S.C. § 1729(a).

26.     The VBA specifies that it applies to disabilities that are "incurred incident to the individual's employment and that is covered under a workers' compensation law or plan that provides for payment for the cost of health care and services provided to the individual by reason of the disability." 38 U.S.C. § 1729(a)(2)(A).

27.     The VBA also specifies that the term "third party" includes "an employer or an employer's insurance carrier." 38 U.S.C. § 1729(i)(3)(B); *see also* 38 C.F.R. § 17.106 (defining "Third-party payer" to include a "Worker's compensation program or plan sponsor, underwriter, carrier, or self-insurer").

28.     Again, Congress's purpose was to enact "a system of direct recovery against workers' compensation plans" for the costs of medical care provided by the VA to veterans for

non-service-connected care. *United States v. Blue Cross & Blue Shield of Md., Inc.*, 989 F.2d 718, 721 n.3 (4th Cir. 1993).

29.     Federal regulations govern the methodology for calculating the "reasonable charges" to which the United States is entitled to reimbursement under the FMCRA and VBA. *See* 38 C.F.R. § 17.101; 38 C.F.R. § 17.106(b)(1).

30.     To advance the United States' recovery interest, federal regulations require veterans who have received free medical care from the VA—and their "personal representatives"—to furnish information to the VA, cooperate in the prosecution of any claim brought by the United States against a third-party payor, and notify the VA of any settlement or offer of settlement received from a third party. 28 C.F.R. § 43.2; *see also* DEP'T OF VETERANS AFFAIRS, *Notification, Cooperation and Affirmative Verification, or E-Verification, in Claims Arising Tort Liability and Third-Party Liability*, 88 Fed. Reg. 8344 (Feb. 8, 2023) (explaining counsel's obligations to the VA and alerting the bar that "failure to properly notify and pay VA could implicate the False Claims Act").

31.     Importantly, neither the veteran who received care nor their legal counsel has any legal right to funds collected for the value of the medical care provided to the veteran by the United States. *See McCotter v. Smithfield Packing Co.*, 868 F. Supp. 160, 163 (E.D. Va. 1994) ("The right to recover medical damages is held exclusively by the United States. … Under the Federal Medical Care Recovery Act, the claim for medical damages suffered as the result of a tortious act and provided by the United States belongs solely to the United States. The individual plaintiff has no claim whatsoever for these damages … . Insofar as medical expenses which the United States is required by law to furnish are concerned, there is no collateral source permitting plaintiffs to collect these expenses, as the sums belong to the United States.").

7

32. Correspondingly, a third-party payer cannot satisfy the VA's independent right of recovery by paying a settlement to the injured or sick veteran: "The only way for a third-party payer to satisfy its obligation under this section is to pay the VA facility or other authorized representative of the United States. Payment by a third-party payer to the beneficiary does not satisfy the third-party's obligation under this section." 38 C.F.R. § 17.106(c).

33. A veteran need not assign anything to the VA in order for the VA to pursue its independent claim to recovery under the statutes. 42 U.S.C. § 2651(a) (describing the government's right to recovery as "independent" of the beneficiary's rights); 38 C.F.R. § 17.106(d) ("The obligation of the third-party payer to pay is not dependent upon the beneficiary executing an assignment of benefits to the United States.").

**The False Claims Act and Reverse False Claims**

34. Generally, the False Claims Act imposes liability upon any person who "knowingly presents or causes to be presented, a false or fraudulent claim for payment or approval" to the United States, 31 U.S.C. § 3729(a)(1)(A), or "knowingly makes, uses, or causes to be used or made, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

35. The statute also includes a provision that imposes liability on a person who "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government … ." 31 U.S.C. § 3729(a)(1)(G). This provision "is referred to as the reverse false claims provision because it covers claims of money *owed* to the government, rather than payments *made* by the government." *United States ex rel. Foreman. v. AECOM*, 19 F.4th 85, 119 (2d Cir. 2021) (emphasis in original) (quoting *United States ex rel. Kester v. Novartis Pharms. Corp.*, 43 F. Supp. 3d 332, 368 (S.D.N.Y. 2014)).

8

36.     The False Claims Act also imposes liability upon any person who "conspires to commit a violation of subparagraph … (G)," the reverse false claims provision. 31 U.S.C. § 3729(a)(1)(C).

37.     The statute defines "knowing" and "knowingly" as having "actual knowledge of the information;" acting "in deliberate ignorance of the truth or falsity of the information;" or acting "in reckless disregard of the truth or falsity of the information;" but does not require "proof of specific intent to defraud." 31 U.S.C. § 3279(b)(1).

38.     It also defines "obligation" to be "an established duty, whether or not fixed, arising from an express or implied contractual … or similar relationship, [or] from statute or regulation … ." 31 U.S.C. § 3729(b)(3).

39.     Any False Claims Act penalty assessed after February 12, 2024, is to be set between $13,946 and $27,018 per violation. 31 U.S.C. § 3729(a)(1); 28 C.F.R. § 85.5.

40.     The False Claims Act also permits the United States to recover "3 times the amount of damages which the Government sustains because of the act of [the defendant]." 31 U.S.C. § 3729(a)(1).

41.     The False Claims Act further makes a violator "liable to the United States Government for the costs of a civil action brought to recover any such penalty or damages." 31 U.S.C. § 3729(a)(3).

### Factual Allegations

*Mr. Pica's Injury and Worker's Compensation Claim*

42.     Jason Pica is a military veteran, who served in the United States Army during the early 1990s before being honorably discharged.

9

43.     As of January 2016, Mr. Pica worked for Wacker Neuson at its facility located at N92 W15330 Megal Court, Menomonee Falls, Wisconsin 53051.

44.     Mr. Pica's job responsibilities included bending hydraulic hoses to attach to axles, which required him to maintain his arms at awkward arm angles.

45.     As a result of his work-related activities and job tasks, Mr. Pica developed bilateral carpal tunnel syndrome, causing pain, tingling, and numbness in both his hands and impairing his range of motion, as highlighted by a sudden incident occurring on January 4, 2016, where both his hands went numb while he worked, causing Mr. Pica to drop the equipment on which he was working.

46.     Due to the workplace incident on January 4, 2016, Mr. Pica filed a worker's compensation claim with his employer, Wacker Neuson, who in turn tendered the claim to its insurer, Zurich America Insurance, who in turn handed over the matter to its claims adjuster, Gallagher Bassett.

47.     Gallagher Bassett assigned Mr. Pica's claim number 000696-175311-wc-01.

### The VA's Medical Care Provided to Mr. Pica

48.     Beginning on January 29, 2016, and continuing through June 24, 2022, Mr. Pica received medical care from providers at the Clement J. Zablocki Veterans Affairs Medical Center located at 5000 West National Avenue, Milwaukee, Wisconsin 53295.

49.     The VA provided this medical care to Mr. Pica free of charge.

50.     After several years of treatments for his carpal tunnel syndrome, Mr. Pica retained Alex E. Eichhorn of the law firm Tabak Law, LLC to represent him in pursuing his worker's compensation claim.

51.     On November 1, 2021, Mr. Eichhorn (on letterhead for Tabak Law) submitted a letter to the VA informing the agency that his law firm represented Mr. Pica with respect to a worker's compensation claim and requesting that the VA provide itemized billing statements showing all charges and payments for all relevant care provided to Mr. Pica by the VA. A true and correct copy of Mr. Eichhorn's letter (redacted to remove information covered by Federal Rule of Civil Procedure 5.2(a)) is attached hereto as **Exhibit 1**.

52.     According to Mr. Eichhorn's letter to the VA, Tabak Law was requesting such billing documentation "to ensure that your office [i.e., the VA] has been properly paid for all services rendered," demonstrating the firm's awareness of its obligation to cooperate with the VA's efforts to recover its costs for the medical care provided to Mr. Pica under the FMCRA, the VBA, and the implementing federal regulations.

53.     The VA complied with Mr. Eichhorn's request and supplied Tabak Law with an itemized billing statement concerning the medical treatments provided by the VA to Mr. Pica, with total billed charges of $106,473.35. Later, the VA supplemented its billing statement to account for additional medical care provided to Mr. Pica, with total billed charges of $112,917.05.

54.     The VA calculated its billed charges in accordance with the applicable federal regulations. *See* 38 C.F.R. § 17.101; 38 C.F.R. § 17.106(b)(1).

**The VA's Notices of Claim**

55.     On February 23, 2022, the VA sent a notice of claim letter to Tabak Law, informing Mr. Eichhorn and the firm of the VA's asserted "right to recover the reasonable charges of care or services provided" to Mr. Pica, a true and correct copy of which is attached hereto as **Exhibit 2**.

56.     Based on Mr. Eichhorn's November 21, 2021, letter, the VA learned that Gallagher Bassett was the claims adjuster assigned to Mr. Pica's claim and, therefore, the VA also sent a notice of claim to Gallagher Bassett on February 28, 2022, a true and correct copy of which is attached hereto as **Exhibit 3**.

57.     Throughout 2022 and 2023, Kaija Slaukstins-Byrkit, a paralegal with the Revenue Law Group in the VA's Office of General Counsel, repeatedly followed up with Tabak Law regarding the status of Mr. Pica's worker's compensation claim.

58.     Tabak Law generally ignored Ms. Slaukstins-Byrkit's inquiries during this time.

*The Defendants' Settlement Negotiations*

59.     On August 29, 2023, Mr. Eichhorn sent an email to Gallagher Bassett to provide a settlement demand on behalf of Mr. Pica before proceeding toward a hearing in front of the Board.

60.     On November 20, 2023, Mr. Eichhorn filed an application for a hearing with the Board, which assigned Mr. Pica's claim "WC Claim No. 2016-014792."

61.     On November 29, 2023, Gallagher Bassett informed Mr. Eichhorn that it had retained Scott Wade, an attorney with the law firm von Briesen & Roper, S.C., to represent it in connection with Mr. Pica's claim.

62.     Beginning in June 2024, Mr. Eichhorn and Mr. Wade exchanged a series of emails concerning settlement negotiations in advance of the August 5, 2024, hearing before the Board scheduled on Mr. Pica's claim. A true and correct copy of Mr. Eichhorn and Mr. Wade's email exchange is attached hereto as **Exhibit 4**.

12

63.     The centerpiece of Mr. Eichhorn's negotiating leverage was the size of the VA's billing charges, for which Mr. Pica had not been required to pay, as seen in the following exchange:

**From:** Alex Eichhorn <alex@tabakattorneys.com>
**Sent:** Tuesday, June 11, 2024 10:16 AM
**To:** Scott E. Wade <scott.wade@vonbriesen.com>
**Subject:** [EXTERNAL] RE: Pica

Scott,

106k in outstanding meds. I can respond at 175k FFCA.

AE

---

**From:** Scott E. Wade <scott.wade@vonbriesen.com>
**Sent:** Monday, June 10, 2024 3:05 PM
**To:** Alex Eichhorn <alex@tabakattorneys.com>
**Subject:** Pica


I have authority to counter at $25,000, FF.

Thanks,

**Scott E. Wade | Attorney**
**von Briesen & Roper, s.c.**
20975 Swenson Drive, Suite 400
Waukesha, WI 53186

Direct: 414-221-6642
Fax: 414-249-2628
scott.wade@vonbriesen.com | vcard | bio
vonbriesen.com

(Exhibit 4.)

64.     In response, Mr. Wade—an experienced workers' compensation attorney presumably aware of his client's potential liability under the FMCRA and the VBA—delicately inquired about what were Mr. Eichhorn's "thoughts on the VA bill."

65.     Mr. Eichhorn made it clear that he and his client intended to keep whatever settlement proceeds they received from Gallagher Bassett and hoped to circumvent the VA's claim entirely:

13

From: Alex Eichhorn <alex@tabakattorneys.com>
Sent: Thursday, June 13, 2024 3:40 PM
To: Scott E. Wade <scott.wade@vonbriesen.com>
Subject: [EXTERNAL] RE: Pica

Scott,

I am hopeful the VA doesn't come after Mr. Pica in the future. However, there is always a risk. Is your client willing to do an HH?

Nevertheless, If not, I can respond with a substantially revised Demand of $95,000 FFCA with Mr. Pica accepting the future potential risk.

Thank you,

*Alex E. Eichhorn*

**Partner/Attorney**
Tabak Law, LLC
6045 N. Green Bay Avenue
Glendale, WI 53209
Tel: 414-351-4400
Fax: 414-727-9973
alex@tabakattorneys.com

(Exhibit 4.)

66.     Mr. Wade's response acknowledged Gallagher Bassett's understanding that Mr.

Eichhorn did not intend to use any settlement proceeds to satisfy the VA's claim:

From: Scott E. Wade <scott.wade@vonbriesen.com>
Sent: Friday, June 21, 2024 4:36 PM
To: Alex Eichhorn <alex@tabakattorneys.com>
Subject: RE: Pica


My clients have given me authority to counter at $85,000, FF.  They are seriously and legitimately concerned about overpaying and leaving your client with a windfall.  No way the VA makes him pay. A big move for them and likely their best offer.

Please let me know whether this is acceptable.  If so, I'll write it up and then please ask to have the 8/5 hearing cancelled.

Thanks,

**Scott E. Wade | von Briesen & Roper, s.c.**
Direct: 414-221-6642 | scott.wade@vonbriesen.com

(Exhibit 4.)

14

67.     The two sides ultimately converged at a final settlement figure of $90,000, which

Mr. Eichhorn explained he preferred to be characterized as strictly for Mr. Pica's permanent

partial disability claim, so as to hopefully avoid a potential claim by another third party seeking

to recoup long-term disability payments that had been made to Mr. Pica:

> **From:** Alex Eichhorn <alex@tabakattorneys.com>
> **Sent:** Tuesday, July 2, 2024 11:58 AM
> **To:** Scott E. Wade <scott.wade@vonbriesen.com>
> **Subject:** [EXTERNAL] RE: Pica
>
> Scott,
>
> I ask that the Compromise specify that the $90,000 is strictly for PPD. This will reduce the risk of LTD
> asking for repayment.
>
> Alex

(Exhibit 4.)

68.     When Mr. Wade questioned Mr. Eichhorn about the need to designate a portion of

the settlement funds for "medical bills," Mr. Eichhorn backtracked:

> **From:** Alex Eichhorn
> **Sent:** Tuesday, July 2, 2024 12:31 PM
> **To:** Scott E. Wade <scott.wade@vonbriesen.com>
> **Subject:** RE: Pica
>
> Scott,
>
> Yes. We must specify $75,000 to trust for meds. The remainder strictly for PPD.
>
> Alex

(Exhibit 4.)

69.     On July 2, 2024, Mr. Eichhorn emailed the administrative law judge assigned by

the Board to Mr. Pica's state workers' compensation claim, Marissa Burtch, to inform her of the

settlement and request that the hearing on Mr. Pica's claim be removed from the calendar.

70. At no point did either side inform the VA of the settlement negotiations or the finalized agreement, despite both parties having received the VA's notice of claim and understanding their responsibilities under the FMCRA, the VBA, and federal implementing regulations.

71. Nor did either side contact the VA to dispute any portion of the VA's billed charges.

72. Without the VA's involvement, counsel for Mr. Pica and Gallagher Bassett negotiated a "full and final compromise agreement," a true and correct copy of which (redacted to remove information covered by Federal Rule of Civil Procedure 5.2(a)) is attached hereto as **Exhibit 5**.

73. With respect to allocation of the $90,000 settlement figure, the parties agreed as follows:

> Now, therefore, in order to compromise the existing dispute, the respondents agree to pay and the applicant agrees to accept the sum of $90,000.00. Out of this sum pleaes direct $75,000.00 to be paid into the Tabak Law, LLC Trust Account for payment of the medical expenses. The parties agree that once the unpaid medical expenses have been resolved, any residue may be released to the applicant and Attorney Eichhorn on an 80/20 basis. Attorney Eichhorn only claims an attorney's fee on the $15,000.00 balance. The parties agree the balance of $15,000.00 represents payment for permanent partial disability.

(Exhibit 5 at 2.)

### *Mr. Eichhorn Misrepresents His Intent to Pay the VA's Claim to the Board*

74. After the parties submitted their settlement agreement to the Board for review, ALJ Burtch emailed Mr. Eichhorn with a question about the agreement. A true and correct copy of ALJ Burtch's email exchange with Mr. Eichhorn is attached hereto as **Exhibit 6**.

75. ALJ Burtch wanted to confirm that the VA's medical bill would be satisfied:

**From:** Burtch, Marissa - DOA <marissa.burtch1@wisconsin.gov>
**Sent:** Wednesday, August 7, 2024 3:25 PM
**To:** Scott E. Wade <swade@vonbriesen.com>; Alex Eichhorn <alex@tabakattorneys.com>
**Subject:** RE: Jason Pica v. Wacker Neuson Corp.; WC Claim No. 2016-014792

External (marissa.burtch1@wisconsin.gov)

Report This Email    FAQ    Skout Email Protection

Attorney Eichhorn,

I have reviewed the compromise agreement in this matter, and I have a follow up question for you. I note that the agreement does set aside a large amount for medical expenses, but since there is no WKC-3 in the file, can you please simply confirm that the amount set aside is expected to cover all outstanding medical expenses so I can note that for my file? Thank you.



**Marissa L. Burtch | Administrative Law Judge**
Office of Worker's Compensation Hearings
Division of Hearings and Appeals
State of Wisconsin Department of Administration
marissa.burtch1@wisconsin.gov

(Exhibit 6.)

76.     Mr. Eichhorn responded by assuring ALJ Burtch that the VA's bills would "be covered:"

**From:**  Alex Eichhorn
**To:**  Burtch, Marissa - DOA; Scott E. Wade
**Subject:**  Re: Jason Pica v. Wacker Neuson Corp.; WC Claim No. 2016-014792
**Date:**  Wednesday, August 7, 2024 3:55:33 PM
**Attachments:**  image001.png

Judge Burtch,

Yes all known, outstanding bills will be covered.

Alex Eichhorn

(Exhibit 6.)

77.     At the time Mr. Eichhorn responded to ALJ Burtch, he had no intention of informing the VA of the settlement or making any other effort to satisfy the VA's outstanding medical bills associated with its treatment of his client.

78.     Based on the previous email exchanges between counsel, Mr. Wade knew as of August 7, 2024, that Mr. Eichhorn did not intend to pay any settlement proceeds to the VA to

17

satisfy its claim but instead intended to accept the "risk" and "hope" that the VA would not attempt to collect its claim from Mr. Pica.

79. Based on the parties' written settlement agreement and Mr. Eichhorn's representation, ALJ Burtch approved the settlement of Mr. Pica's claims through a final order dated August 9, 2024, a true and correct copy of which is attached hereto as **Exhibit 7**.

80. ALJ Burtch's final order directed as follows:

### O R D E R

Within twenty-one days from date, respondent and insurance carrier shall pay to the applicant, Jason Pica, the sum of Eleven thousand six hundred three dollars and seventy-six cents ($11,603.76) as compensation; to applicant's attorney, Attorney Alex E. Eichhorn, the sum of Three thousand dollars and no cents ($3,000.00) as attorney's fees plus the sum of Three hundred ninety-six dollars and twenty-four cents ($396.24) as reimbursement for costs; and to the Tabak Law LLC Trust Account, the sum of Seventy-five thousand dollars and no cents ($75,000.00) for satisfaction of outstanding medical expenses. After resolution of the medical expenses, if there are funds remaining, the balance shall be divided eighty (80) percent to the applicant and twenty (20) percent to the applicant's attorney as an additional attorney's fee.

(Exhibit 7.)

***Tabak Law Diverts the Settlement Proceeds to Itself and Mr. Pica***

81. Gallagher Bassett disbursed the settlement funds two weeks later, depositing $75,000 into the Tabak Law, LLC Client Trust Account on August 21, 2024.

82. Five days later, on August 26, 2024, Tabak Law disbursed these funds from its trust account, sending a check for 80% ($60,000) to Mr. Pica and a second check for 20% ($15,000) to its own firm checking account. True and correct copies of Tabak Law's trust account ledger and these two checks (redacted to remove information covered by Federal Rule of Civil Procedure 5.2(a)) are attached hereto as **Exhibit 8**.

83. Tabak Law disbursed these funds in violation of the settlement agreement and the Board's order, as none of Mr. Pica's medical expenses had been resolved and, indeed, neither Mr.

18

Eichhorn, Mr. Wade, nor Gallagher Bassett ever informed the VA of the settlement or attempted to negotiate a resolution of the VA's claim.

84.    In short, Mr. Eichhorn and Tabak Law took money deposited in their firm trust account that had been specifically earmarked to pay the VA's medical claim and, rather than provide that money to the VA, pocketed $15,000 and sent the rest to their client as an unauthorized windfall.  This was exactly the type of result that Congress sought to avoid when it passed the FMCRA and VBA. *See United States v. Trammel*, 899 F.2d 1483, 1486 (6th Cir. 1990) ("[T]he FMCRA was designed to prevent the unjust enrichment of victims, who were able to recover under the permissive decisions allowing recovery under the collateral source doctrine, and tortfeasors and their insurance companies, who benefited from windfall savings."); *United States v. Leonard*, 448 F. Supp. 99, 101 (W.D.N.Y. 1978) ("The purpose of the MCRA was to avoid windfall recoveries to accident victims who were immune from a Government suit … .").

***The VA Discovers Defendants' Scheme***

85.    Only after Ms. Slaukstins-Byrkit followed up with Mr. Eichhorn regarding the status of Mr. Pica's workers' compensation case in November 2024 did the VA learn about the settlement.  A true and correct copy of a chain of email communications between Ms. Slaukstins-Byrkit and employees of Tabak Law, including Mr. Eichhorn, sent between May 16, 2022, and November 14, 2024, is attached hereto as **Exhibit 9**.

86.    When Ms. Slaukstins-Byrkit demanded that Mr. Eichhorn pay the $75,000 to the VA, Mr. Eichhorn lied in his response, falsely stating that his firm "did not have a lien notice on file" and falsely representing that "[a]ll funds have been distributed directly to Mr. Pica," when in fact his law firm had taken $15,000 for itself:

19

| | |
|---|---|
| **From:** | Alex Eichhorn |
| **To:** | Slaukstins-Byrkit, Kaija (OGC) |
| **Cc:** | Graham, D'Anthony M. (OGC) |
| **Subject:** | [EXTERNAL] Re: VA Case 505896 Payment Demand. |
| **Date:** | Thursday, November 14, 2024 8:35:55 AM |
| **Attachments:** | image001.jpg |
| | image002.jpg |

Hello,

My office took this claim over from Becker French, we do not and did not have a lien notice on file. During our last communication with Mr. Pica, he indicated that he was in the process of filing Chapter 7 Bankruptcy.

All funds have been distributed directly to Mr. Pica.

Alex

(Exhibit 9.)

87.     Upon information and belief, Mr. Pica has not filed for Chapter 7 bankruptcy in the past 25 years.

88.     Despite being repeatedly reminded of their obligations under the FMCRA, the VBA, and implementing federal regulations, none of the defendants have yet satisfied the VA's claim.

89.     Tabak Law remains in possession of $15,000 in settlement proceeds, which were designated to satisfy Mr. Pica's medical bills and should have been paid to the VA, that it instead took for itself as an unauthorized attorney fee in violation of ALJ Burtch's order.

90.     Rather than satisfy the VA's claim, the defendants have instead returned to the Board to request that it re-open Mr. Pica's worker's compensation proceedings, presumably to further evade the VA's claim.

## COUNT I

### Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G) – Gallagher Bassett

91.     The United States re-alleges and incorporates by reference all the foregoing allegations of its complaint.

20

92. Under the FMCRA, the VBA, and the applicable implementing federal regulations, Gallagher Bassett had an obligation to satisfy the VA's claim for its billed charges related to its treatment of Mr. Pica's carpal tunnel injury.

93. Gallagher Bassett had knowledge of the VA's claim since February 2022, when it received written notice from the VA.

94. Rather than satisfy the VA's claim, however, Gallagher Bassett knowingly and improperly agreed to a settlement with Mr. Pica for less than the value of the VA's claim in exchange for Mr. Pica agreeing to accept the "future risk" posed by the VA's claim, and Gallagher Bassett concealed the existence of the settlement from the VA.

95. Given that Gallagher Bassett had received written notice of the VA's claim and knew that regulations promulgated by the VA did not permit third-party payers to resolve claims with a veteran or his counsel directly, *see* 38 C.F.R. § 17.106(c), Gallagher Bassett was aware of an obligation that it owed to the federal government and knowingly and improperly avoided it by transmitting the settlement funds to Tabak Law's trust account rather than the VA, in violation of 31 U.S.C. § 3729(a)(1)(G).

96. As a result of Gallagher Bassett's conduct, the United States was damaged by no less than $75,000.

97. Gallagher Bassett is thus liable to the United States under the False Claims Act, 31 U.S.C. § 3729(a) and 28 C.F.R. § 85.5, for a penalty of between $13,946 and $27,894 for each violation, plus three times the amount of damages that the United States sustained.

## COUNT II

### Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G) – Veteran's Counsel Defendants

98.     The United States re-alleges and incorporates by reference all the foregoing allegations of its complaint.

99.     Under the FMCRA, the VBA, and the applicable implementing federal regulations, the Veteran's Counsel Defendants had an obligation to transmit the funds that they collected from Gallagher Bassett based on the VA's billed charges in the settlement of Mr. Pica's worker's compensation claim to the VA.

100.    The terms of the Board's order dated August 9, 2024, also imposed upon the Veteran's Counsel Defendants an obligation to pay to the VA the amounts deposited into the Tabak Law, LLC Client Trust Account by Gallagher Bassett for satisfaction of Mr. Pica's medical expenses.

101.    The Veteran's Counsel Defendants collected $75,000 owed to the United States for the value of medical care provided to Mr. Pica by the VA free of charge, but then knowingly and improperly concealed the existence of the settlement from the VA and knowingly and improperly avoided their obligation to transmit such funds to the VA.

102.    Given that the Veteran's Counsel Defendants had received written notice of the VA's claim and periodic follow-ups on that claim from the VA's representatives, they were aware of the obligation owed to the federal government and knowingly and improperly avoided it by transmitting the funds instead to their own bank account and to that of their client, in violation of 31 U.S.C. § 3729(a)(1)(G).

103.    As a result of the Veteran's Counsel Defendants' conduct, the United States was damaged by no less than $75,000.

104. The Veterans' Counsel Defendants are thus liable to the United States under the False Claims Act, 31 U.S.C. § 3729(a) and 28 C.F.R. § 85.5, for a penalty of between $13,946 and $27,894 for each violation, plus three times the amount of damages that the United States sustained.

## COUNT III

### Conspiracy to Violate the False Claims Act, 31 U.S.C. § 3729(a)(1)(C) – All Defendants

105. The United States re-alleges and incorporates by reference all the foregoing allegations of its complaint.

106. As set forth above, the Veterans Counsel Defendants conspired with Mr. Wade and Gallagher Bassett to avoid their respective obligations to pay the VA its claim for its billed charges related to Mr. Pica's medical care.

107. When negotiating the settlement agreement, Mr. Eichhorn and Mr. Wade exchanged emails discussing the "risk" posed by the VA's claim.

108. According to Mr. Wade, Gallagher Bassett believed there was "[n]o way" that the VA would require Mr. Pica to pay back any settlement proceeds, presenting the opportunity for a "windfall":

**From:** Scott E. Wade <scott.wade@vonbriesen.com>
**Sent:** Friday, June 21, 2024 4:36 PM
**To:** Alex Eichhorn <alex@tabakattorneys.com>
**Subject:** RE: Pica

My clients have given me authority to counter at $85,000, FF. They are seriously and legitimately concerned about overpaying and leaving your client with a windfall. No way the VA makes him pay. A big move for them and likely their best offer.

Please let me know whether this is acceptable. If so, I'll write it up and then please ask to have the 8/5 hearing cancelled.

Thanks,

**Scott E. Wade | von Briesen & Roper, s.c.**
Direct: 414-221-6642 | scott.wade@vonbriesen.com

(Exhibit 4.)

109.    Rather than pay the $75,000 in settlement proceeds earmarked for medical expenses directly to the VA—and risk the VA insisting on receiving the full value of its $112,917.05 claim—the parties instead agreed to pay the funds into a client trust account controlled by the Veteran's Counsel Defendants.

110.    The defendants agreed to do so despite being fully aware that such settlements were prohibited under the FMCRA and its implementing regulations. *See* 38 C.F.R. § 17.106(c) ("The only way for a third-party payer to satisfy its obligation under this section is to pay the VA facility or other authorized representative of the United States. Payment by a third-party payer to the beneficiary does not satisfy the third-party's obligation under this section.").

111.    Both sides also agreed not to contact the VA to inform it of the settlement, in violation of their responsibilities under the applicable federal regulations. *See* 28 C.F.R. § 43.2; *see also* DEP'T OF VETERANS AFFAIRS, *Notification, Cooperation and Affirmative Verification, or E-Verification, in Claims Arising Tort Liability and Third-Party Liability*, 88 Fed. Reg. 8344 (Feb. 8, 2023).

112.    After the VA learned about the settlement, it reiterated its payment demands to both sides, but none of the defendants has tried to satisfy the VA's claim.

113.    Instead, the Veteran's Counsel Defendants, Mr. Wade, and Gallagher Bassett have agreed to return to the Board, asking it to unwind their settlement agreement, presumably to try to further frustrate the VA's collection efforts.

114.    Through their aforementioned conduct, the Veteran's Counsel Defendants, Mr. Wade, and Gallagher Bassett have conspired to commit a violation of the False Claims Act's reverse false claims provision, 31 U.S.C. 3729(a)(1)(G), by knowingly concealing and

knowingly and improperly avoiding their obligation to pay money to the federal government, in violation of 31 U.S.C. § 3729(a)(1)(C).

115.    As a result of the defendants' conspiracy, the United States was damaged by no less than $75,000.

116.    Each of the defendants is thus liable to the United States under the False Claims Act, 31 U.S.C. § 3729(a) and 28 C.F.R. § 85.5, for a penalty of between $13,946 and $27,894 for each violation, plus three times the amount of damages that the United States sustained.

## COUNT IV

### Breach of Contract (Third Party Beneficiary) – Veteran's Counsel Defendants

117.    The United States re-alleges and incorporates by reference all the foregoing allegations of its complaint.

118.    The Veteran's Counsel Defendants entered into a contractual settlement agreement with Gallagher Bassett, exchanging consideration to resolve Mr. Pica's worker's compensation claim (including potential statutory attorneys' fees) for the total sum of $90,000.

119.    The VA was an intended third-party beneficiary of the settlement agreement, as the parties expressly agreed that Gallagher Bassett would "direct $75,000.00 to be paid into the Tabak Law, LLC Trust Account for payment of the medical expenses." *Becker v. Crispell-Snyder, Inc.*, 763 N.W.2d 192, 196 (Wis. Ct. App. 2009) ("A party proves its third-party beneficiary status by pointing to specific language in the contract establishing intent."); *see also Holbrook v. Pitt*, 643 F.2d 1261, 1270–71 (7th Cir. 1981) (similar).

120.    The VA's billed charges were the only outstanding medical expenses at issue in Mr. Pica's worker's compensation proceedings before the Board.

121.     Because the Veteran's Counsel Defendants accepted consideration from Gallagher Bassett upon their promise to satisfy the VA's claim for the medical care provided to their client, the VA may sue to enforce the parties' contract as a third-party beneficiary. *See Meleski v. Schbohm LLC*, 817 N.W.2d 887, 890 (Wis. Ct. App. 2012) ("[A] person may enforce a contract as third-party beneficiary if the contract indicates that he or she was either specifically intended by the contracting parties to benefit from the contract or is a member of the class the parties intended to benefit.") (quoting *Milwaukee Area Tech. Coll. v. Frontier Adjusters of Milwaukee*, 752 N.W.2d 396, 377 (Wis. Ct. App. 2008)).

122.     In breach of the settlement agreement, and despite repeated demands made by the VA, the Veteran's Counsel Defendants have failed and refused to transmit the $75,000 to the United States and have instead improperly retained no less than $15,000 for themselves as an unauthorized attorney fee.

123.     As a result of the Veteran's Counsel Defendants' conduct, the United States was damaged by no less than $75,000.

## COUNT V

## Conversion – Veteran's Counsel Defendants

124.     The United States re-alleges and incorporates by reference all the foregoing allegations of its complaint.

125.     By disbursing from their client trust account $75,000 that had been specifically earmarked in the settlement agreement and the Board's order to satisfy Mr. Pica's medical expenses, the Veteran's Counsel Defendants intentionally controlled and took possession of property belonging to the VA.

126.     The Veteran's Counsel Defendants disbursed these funds without the VA's consent and, indeed, without informing the VA of the settlement, in violation of their obligations under federal law. *See* 28 C.F.R. § 43.2; *see also* DEP'T OF VETERANS AFFAIRS, *Notification, Cooperation and Affirmative Verification, or E-Verification, in Claims Arising Tort Liability and Third-Party Liability*, 88 Fed. Reg. 8344 (Feb. 8, 2023).

127.     The conduct by the Veteran's Counsel Defendants seriously interfered with the United States' right to possess these settlement funds.

128.     As a result of the Veteran's Counsel Defendants' conduct, the United States was damaged by no less than $75,000.

WHEREFORE, the plaintiff, the United States of America, respectfully requests that the Court enter a judgment in its favor and against the defendants, Alex E. Eichhorn, Gallagher Bassett Services, Inc., Scott Wade, and Tabak Law, LLC, that awards:

(i)      As to Counts I, II, and III, three times the amount of damages sustained by the United States because of the defendants' violations of the False Claims Act, the maximum civil penalties as provided by law, and the United States' costs associated with the investigation, prosecution, and collection of the debt in this matter;

(ii)     As to Count IV, the United States' actual damages caused by the breach, which are no less than $75,000, plus pre- and post-judgment interest and costs as allowed by law;

(iii)    As to Count V, the return of the $75,000 properly belonging to the United States, which had been deposited into the trust account maintained by the Veteran's Counsel Defendants, plus punitive damages in an amount to be determined by the Court, plus pre- and post-judgment interest and costs as allowed by law; and

(iv)    Any and all such further relief that the Court deems just and proper.


Dated this 23rd day of April, 2025.

                                RICHARD G. FROHLING
                                Acting United States Attorney

                        By:    /s/ *Aaron R. Wegrzyn*

                                AARON R. WEGRZYN
                                Assistant United States Attorney
                                Eastern District of Wisconsin
                                State Bar No. 1094262
                                517 East Wisconsin Avenue
                                Milwaukee, WI  53202
                                (414) 297-1700
                                Fax: (414) 297-4394
                                aaron.wegrzyn@usdoj.gov